Case number 21-1093 United States of America v. Jeremie Ennis. Order of argument is not to exceed 15 minutes per side. Mr. Gronzig for the appellant. Good morning. If the appellant counsel will tell us how much time you need for rebuttal, you may then proceed with the argument. Thank you. I'd like five minutes for rebuttal, please. All right. Thank you very much. Good morning, your honors. May it please the court, I am Ryan Gronzig from the Western District of Michigan's CJA panel. On behalf of appellant Jeremie Scott Ennis, I'd like to start by saying I apologize for my inability to appear on video. I tested my setup earlier this week and everything appeared to be fine. Mr. Ennis was arrested in Kalamazoo, Michigan by the Kalamazoo Valley Enforcement Team, or KVAT, a drug task force after KVAT obtained a warrant to use cell site location information or CSLI to track Mr. Ennis' phone. Mr. Ennis filed a motion to suppress on the grounds that the warrant was unconstitutionally obtained. After his motion to suppress, excuse me, after his motion to suppress the evidence against him was denied, he pled guilty to a possession count and a firearm count. Mr. Ennis presents two primary issues on appeal. First, that the district court committed error in denying his motion to suppress the evidence obtained as a result of the CSLI warrant that violated his Fourth Amendment rights. Second, Mr. Ennis argued that his sentence was substantively unreasonable. He received a within guideline sentence of 12.5 years on count one. Mr. Ennis argued that sentencing of the Western District of Michigan should follow the precedents set by one of its judges and avoid sentencing Mr. Ennis under the purity-based methamphetamine guidelines, which are outdated. The sentencing judge declined. With regard to Mr. Ennis' suppression argument, the district court's factual findings are reviewed for clear error. Whether a search was supported by reasonable suspicion is a mixed question of law and facts for this court to review de novo. And with regard to his sentencing argument, this court reviews for abuse of discretion. Turning to Mr. Ennis' suppression argument, Mr. Ennis argues here as he did below that the CSLI warrant was invalid and that the fruits of the warrant, all of the fruits of the warrant should have been suppressed. First and primarily, Mr. Ennis argues that the warrant was insufficiently supported by probable cause. That warrant was obtained by a KVET officer and it alleged very little about Mr. Ennis, quite frankly. In only a real attempt to create a nexus between Mr. Ennis and any drug trafficking, in that warrant application was an allegation that KVET had been told that he was involved in unspecified criminal activity by an unnamed source. There was no information- Counsel, excuse me for interrupting. Counsel, in terms of the search issue, the district court here held that there was no search because there was no reasonable expectation of privacy. What is your position on that? And if you think there was a search, what's your position as to how and to what extent the Carpenter decision would apply in these factual circumstances? Thank you, Your Honor. My position with regard to that is that there information. I believe the Carpenter decision does apply, or perhaps a better way to phrase it, can be applied to the situation here. Carpenter, which I know I talked about at length in my briefing, clearly has a narrow holding. Justice Roberts clearly wanted to keep it narrow and not bind appellate courts and district courts beyond the contours of the decision itself. Counselor, this is Judge Griffin. I agree with you. Carpenter has a narrow holding. It actually states, we do not express a view on real-time CSILI, cellular site location information. If Carpenter does have a narrow holding and does not apply to the real-time cell phone tracking, which is what we have in this case, why are we not bound by our published precedent on the issue, which is United States v. Skinner and United States v. Riley, which holds that real-time cell tracking is not a search? Thank you. I see the decision in Carpenter. The court in Carpenter discusses and expresses this great concern about CSILI and this potential invasion of privacy. The majority does not bind lower courts necessarily with this opinion, but it expresses this fundamental concern that I think this court should apply. If we look at the majority and if we look at Justice Gorsuch's dissent, which endorses many of the same privacy concerns and specifically addresses that question, Justice Gorsuch criticizes the majority for not providing clarity or significant guidance to district and circuit courts. He poses the question, why are we distinguishing historical data from real-time data? To say that Carpenter overrules or abrogates our precedent, does it not have to be clear as opposed to by implication that the reasoning is inconsistent with our published opinion? We do not overrule or abrogate our precedents lightly. Does it not have to be relatively clear that that is what is intended by the Supreme Court? I agree that we do not abrogate or discard precedent lightly, but I think the principles expressed in Carpenter can be interpolated or extrapolated by this court. I think we can derive from Carpenter the principles, the concerns that the Supreme Court is facing here. Our precedents that we are looking at are not ancient by any means, but they are old. They are older than the technology is developing. Skinner is a few years old. The other cases are a few years old. Riley is 2017. It is only four or five years ago. It is not that much. Skinner is 2012. My recollection, and I may be off-base, is that Riley is based on Skinner or interprets Skinner. That is true. Riley is based on Skinner. That 2012 interpretation of technology and the necessity of privacy and the application of cell phones and how they interact with our lives, how ubiquitous they are, I think the world has changed since 2012. If we are actually talking about the privacy, here we only had two pings of the cell phone that occurred a few hours apart. Carpenter involved historical cell phone data for 127 days, did it not? The Supreme Court said that was way too much. That obviously is a search when you get 127 days of data. Here, we have only got two pings of the phone over a couple hours. How do we say that Carpenter could control this when it is so factually different? I agree that there is that distinction in the CSI collection. Carpenter appears to be more advanced. This is one of the things Mr. Ennis complained about in his brief. We are accepting the two-ping idea as fact. It really does not have much beyond a statement of police support by the same officer who submitted the insufficient warrant to justify the notion that it is two pings. The district court accepted that at face value despite Mr. Ennis' request for an evidentiary hearing. I do not know that it is appropriate to accept the two-ping idea. I think we can say just from the time frame that it is a more compressed time frame than we dealt with in Carpenter. I do not think that minimizes Mr. Ennis' expectation of privacy any less when he is in a private residence and his cell phone is being used to track him like a GPS tracer. I think he still has that expectation of privacy. One ping, two pings, ten pings, it is all an invasion of his privacy as Mr. Ennis sees it. Is it an unreasonable search? The Fourth Amendment does not prohibit all searches and seizures but only unreasonable searches. Yes, Your Honor. I believe it is an unreasonable search for the reasons stated. I believe, as I think I complained about probably at too much length in the brief, our cell phones are this ubiquitous feature of modern life that is with us everywhere. The notion that it can be converted into something that law enforcement or the government can use to track us at any moment, just as a citizen, let alone as a defense attorney, I find that repugnant. Here, they actually had a search warrant to do it. I tend to disagree that the search warrant was deficient. Here, the search warrant was to effectuate an arrest. Your client had two outstanding arrest warrants. They applied for the search warrant to ping his phone so they could execute those search warrants so they could find him. They said in the affidavit for the search warrant that the phone is likely to show where he is so they could actually arrest him on the arrest warrants. I think there was a nexus there that it was reasonably probable that if the search warrant were issued that they could effectuate the arrest, which is what they wanted to do. Tell me how the search warrant, the affidavit, was deficient constitutionally under those circumstances. Thank you, Your Honor. I know the government takes that position as well. Mr. Ennis's position is that the arrest warrants, I don't want to call them a fiction because they're obviously real warrants, but they're a red herring. The KCVAD is not in the business of arresting people on moving violations or failure to appear warrants. They're a drug task force. The CSLI was not in reality being obtained to arrest Mr. Ennis on a failure to appear warrant. It was being obtained for this drug investigation. The arrest warrants that had nothing to do with this investigation were being used to support and bolster that warrant. It's kind of looking at the subjective intent. It's kind of like a traffic stop. If the police stop somebody for failing to put their turn signal on, the argument is always made that they really wanted to stop them for drunk driving or they wanted to stop them for something else. We look at the objective evidence. If they could actually stop them for not doing their turn signal, it's a valid stop. It's a valid search and seizure. That's basically what you have here. The affidavit says he's got two outstanding arrest warrants and we need this to arrest him. You say that's not the real reason, but under the Fourth Amendment, we looked at the objective evidence, don't we, rather than subjective evidence? We do to a degree, but I think I cited a case in our brief that stands and I know Mr. Castle disagrees with my interpretation of it, but I believe it stands the proposition that when we have a warrant, we can't submit a warrant to investigate a crime. Warrants are, I think, a little different than traffic stops. Our warrant has to have a justification that's actually tied to the actual reason for the warrant. I don't think we can invent... Well, it's not inventive. That's the wrong word. I don't think we can bolster the warrant with things that are entirely unrelated to the warrant. Okay. Thank you. Thank you, Your Honor. I will save my remaining two minutes for rebuttal. Thank you. We'll hear from the government. May it please the court, Patrick Castle for the United States. The district court correctly denied Mr. Ennis' motion to suppress evidence arising from his arrest and the court also did not abuse its discretion in denying Mr. Ennis' related requests for two forms of evidentiary hearings and in determining and imposing Mr. Ennis' prison sentence. In February 2020, Mr. Ennis had two open misdemeanor warrants for his arrest and police sought to execute on those warrants. So, they obtained a search warrant, which authorized them to collect real-time information produced by Mr. Ennis' cell phone indicating Mr. Ennis' immediate location. The first location ping they received... Was that a search counselor? It was not a search, Your Honor. So, your position would be a warrant was unnecessary? Although they obtained a warrant, a warrant was unnecessary under this court's precedence in Skinner, Rios, and Riley, Your Honor. Because the government engaged in only a very short period of real-time tracking, the Supreme Court's 2018 decision in Carpenter does not apply to the facts of this case. Let's step into the idea that they got the warrant and talk about that because the warrant authorized over 40 days of real-time tracking. And isn't the authorization at issue in Carpenter? It's the number of days authorized. Do you take the position that we can say the government can authorize a warrant for 60 or 90 days and if they get lucky enough in pinging in the first two, we're only going to treat it as if it's a two-day invasion? Your Honor, I think this question very succinctly identifies why Carpenter is not applicable to this case. Because when you're dealing, as in Carpenter, with historical CSLI, when the information is obtained, it's obtained all at one time. So, whatever the amount requested by the government was is received all in one big lump. So, you do look to the amount requested, which barring some technical error will be the amount received. And it makes sense that the Supreme Court in Carpenter did not address real-time CSLI because it has a fundamentally different character. When real-time location information is collected, it doesn't come all at once. It comes one piece of information at a time. So, the amount requested in the warrant in a real-time tracking case is not the pertinent number. The pertinent number, at the initial question of the analysis, was there a search and was there a reasonable expectation of privacy, is the amount of information that was obtained. Because that reflects the extent of whatever intrusion there may have been. That seems to me, Counselor, just to be ripe for abuse. So, under your argument, the government could go in and get almost an indefinite period of real-time tracking and then could decide, well, we've got two pings, we know where he is, but we think he's going to lead us to somebody else. So, I think we will just wait another several weeks and now we've got one more person. Why don't we go on and wait another month? I mean, how can that set a standard that would be appropriate at law to say, you can get it for as long as you want, we're not going to look at that, all we're going to look at is how much you end up using. I'm concerned about that. Well, Your Honor, I think the Supreme Court set a marker in Carpenter that is potentially useful in a case that involved long-term tracking, which again is not this case. And the marker was, in footnote three, that seven days of tracking is a minimum threshold for historical location information. And I think that if you had a case that started to approach that number, you might have a closer call. But this is not that case. And I would, you know, counsel for Mr. Ennis raised a couple of factual points I just want to clarify. Counsel for Mr. Ennis claimed that the court could not rely on this two-location fact that was found by the district court. The district court got that number from Mr. Ennis' briefs. He claimed it was two-location pings based on his own review of the record, and the district court adopted that. Yeah, I'm not fighting over the veracity of that. I don't think anybody's playing fast and loose. I'm concerned with the conceptual issue. And I guess I've gotten your answer on that, which is fair. The next conceptual issue that raises its head here is that really the Skinner-Riley level group of cases grew out of 2012. And we're in 2022, so that's 10 years ago. What is it about the decision in Carpenter that you can say would not apply to real time? Because I think the key phrases that we could draw from Carpenter is that data provides an intimate window into a person's life, revealing their movements, family, political, professional, religious, sexual. All of those things are available. How does that not apply to real time CSLI? And the court did recognize those concerns in Carpenter, specifically with respect to what can be discerned from a large quantity of historical CSLI, that 127 days. And this was echoing the concerns that were raised in Justice Alito and Justice Sotomayor's concurrences in the Jones case about comprehensive location tracking and how knowing a person's location over a long period of time could provide a window into intimacies of their life that were five days or 10 days also provide that window depending upon where this person went. If this person went to a doctor or went to a political rally or a family event or had a sexual liaison, aren't all of those things just dependent upon what day they happened to occur? And so isn't that intimate window opened into the life of the person on whom the CSLI warrant is granted? Your Honor, I think that as time goes by, it is probable that close cases could come before this and other federal appellate courts where the number of days approaches seven or where the information that's obtained is especially intimate in nature. In this case, the information collected was ping number one, that Mr. Ennis's phone was on a particular city block, and ping number two, that Mr. Ennis's phone was on a different city block. You would see, wouldn't you, that CSLI has only gotten more and more effective. I mean, that was the argument in Carpenter that right now we're, you know, five years ago or two years ago, all CSLI could tell us was a quadrant where the vehicle or the phone was. But by the time shortly after Skinner, it became more and more able to tell us very specific things. And aren't we now actually in a world in which CSLI could tell us precisely where someone is? I mean, perhaps even to the room that they are in. I mean, isn't that the world that we face today? It's my understanding, Your Honor, that there are instances where cell site location information can be provided in a very precise way, as you're describing. The information that the police collected in this case was not at that level of precision. Mr. Ennis claims in his reply brief on appeal that he was located in a private residence at the time of one or both pings. But tellingly, there's no citation to the record. To the contrary, even in Mr. Ennis's opening brief, he acknowledges what the district court recognized as an undisputed fact, that when police received the second ping, they drove down the city block where that ping went off, and they saw Mr. Ennis's car in a driveway as they went by. So are you proposing a rule that each time this occurs, courts would have to take it up and say, well, was this number of days, they found on this one, they found out where he had gone to a political rally. So perhaps that's too invasive. But in the next one, they didn't find out that information. So that's okay. I imagine courts are going to be looking for a bright line rule that might help them out and help you out rather than arguing over exactly how far this particular warrant happened to have told us about what that person is doing. I think the idea that Carpenter said that phones have become a feature of human anatomy that tells us not just where your car is or not what quadrant you're in, but where you are physically located. Do you have a proposal along that line for what test you think should be applied? I think the test that should be applied is the test that this court announced in Riley, Rios, and Skinner. And with respect to the change of technology- A 10-year-old test should govern In Riley versus California, Supreme Court 2014, the Supreme Court said that if an alien visited planet Earth, they might mistakenly believe that cell phones were part of human anatomy. The technology that we're talking about, common use of cell phones, and their ability to indicate a person's location has really not changed in a material way. Certainly nothing on this record establishes that there's been any kind of change which would support a deviation from this court's clear precedence. And I'll add that there's another difference between the Carpenter case, which may be even more crucial, which is that a warrant was obtained in this case. Yes. To the extent that this court has serious concerns about how to describe a bright line test, it need not reach that question if this is not the right case for that. Because police did what the Supreme Court instructed them to do with even just backwards looking CSL fly in Carpenter, which is to obtain a warrant. And that warrant was valid for the reason set forth in the government's brief. And finally- Yeah. If the warrant were not valid, and I'm not quite sure how it would not be valid here, unless we look at the intent of the officer obtaining the affidavit, the sub-issue after that would be good faith. That, okay, if the warrant, first of all, whether there's a search, okay, if we say there's a search, then you need a warrant, well, we got a warrant. While the warrant's defective, usually the backup position for the government after that is, well, okay, we have a warrant and we exercise good faith. On reliance on the warrant, but here you have not raised the issue of good faith, have you? And if you haven't, why not? We did raise the issue of good faith in our appellate brief. Mr. Ennis's view is that we raised it in too perfunctory a manner, but in the government's view, the argument does not require an extensive description. Mr. Ennis stated in his opening brief that the affidavit was bare bones. It's plainly not. Having raised the issue, the government's response is that there is no exception set forth in Leon or any of its progeny, which would support denying the good faith exception to the warrant requirement in this case. And even beyond that, the attenuation principle, which set forth in the government's brief, would make exclusion of evidence unwarranted. Because even if collecting two location blips of evidence was a search and was not supported by a valid warrant and was not protected by the good faith doctrine, there were intervening circumstances and no wrongful police conduct whatsoever. The intervening circumstances were that police then visually saw Mr. Ennis. They followed him to a parking lot. And when he realized that police were trying to place him under arrest, he drove his car into theirs, leapt out of his car and ran. This provided an independent basis for police to do what they did, which was to chase Mr. Ennis and apprehend him. And when they did that, they found on his person a significant amount of cash, 66 grams of methamphetamine. Because there are other bases to affirm this case, which I think the first one is the valid warrant. If we were to rule in our opinion that Carpenter abrogates our binding, our formally binding precedence of Skinner and Riley, but nevertheless affirm on the basis that the warrant here, which was required, was valid, would our discussion of accepting Carpenter be dicta and therefore not binding? And therefore, because it'd be unnecessary for our disposition, so it'd be kind of a useless exercise here to rule whether or not Carpenter applies? In the government's view, if this court is that the government complied with Carpenter's demands by seeking a warrant, there would be no reason to reach the secondary question at that point of whether a search occurred, since whether or not there was a search. Okay. I guess my question is, if we affirm on the basis that, okay, the warrant was valid here, if we expressed an opinion as to Carpenter, would that just be dicta and therefore not unnecessary? Would it be dicta then? I believe it would, Your Honor. Okay. All right. All right. Thank you. Thank you for your arguments, and we'll hear rebuttal at this time. Thank you very much. Thank you, Your Honor. Just briefly, to address attenuation, to the extent that it's necessary, I don't see that there's anything that breaks the chain here between the unconstitutional police conduct and the discovery of the evidence. If the government's argument that pursuit can break the chain doesn't seem to make sense to me. If police can break the chain after unconstitutionally tracking someone with their phone just by tailing them for a few minutes, there's no point in any privacy jurisprudence. If all you have to do to save any warrantless or defective CSLI search is to tail a guy down the street for a few minutes, it seems to create a pretty clear game plan for law enforcement there. I think this court is acknowledging that the privacy implications of CSLI are tremendous. There are grave concerns. The Supreme Court appears to be clearly troubled by the prevalence and use of this information and the idea that any citizen can be tracked with pinpoint accuracy at any time, I think should be troubled to the judiciary. I don't have much more to say beyond that, other than that I appreciate your time and consideration of this issue. Thank you. Do any member of the panel have any further questions for Mr. Gronzig? No, I don't. Okay. Thank you. Well, thank you very much, Mr. Gronzig. I see that you were appointed pursuant to the Criminal Justice Act and the court would like to thank you for your service in that regard through our system of justice. I know you do that as an accommodation to the court and to your clients, so thank you very much. The case is submitted.